**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

DEBRA PERZYNSKI,

          Plaintiff,

vs.

CERRO GORDO COUNTY, IOWA, a
Municipal Corporation, and Kenneth
Kline and Heather Mathre, individually
and in their corporate capacities,

          Defendants.

No. C12-3003-LTS

*MEMORANDUM OPINION AND*
*ORDER GRANTING DEFENDANTS'*
*MOTION FOR SUMMARY*
*JUDGMENT*

---

### *TABLE OF CONTENTS*

*I.*     *PROCEDURAL HISTORY* ................................................................ *2*

*II.*    *RELEVANT FACTS* ...................................................................... *2*

*III.*   *SUMMARY JUDGMENT STANDARDS* .......................................... *7*

*IV.*   *ANALYSIS* ................................................................................. *9*
      *A.*     *Section 1983* ................................................................. *10*
           *1.*     *Probable Cause* .................................................... *10*
           *2.*     *Kline's and Mathre's Liability* .............................. *15*
           *3.*     *Cerro Gordo County's Liability* ............................ *18*
      *B.*     *Malicious Prosecution* ................................................... *21*
           *1.*     *Probable Cause* .................................................... *21*
           *2.*     *Instigation* .......................................................... *21*
           *3.*     *Malice* ................................................................ *24*
      *C.*     *False Imprisonment* ...................................................... *26*

*V.*     *Conclusion* ................................................................................ *27*

This case is before me on defendants' motion (Doc. No. 6) for summary judgment, filed December 27, 2012. Plaintiff filed her resistance (Doc. No. 13) on February 20, 2013, and defendants filed their reply (Doc. No. 19) on March 7, 2013. After resolving a dispute over the contents of plaintiff's summary judgment appendix, I heard oral arguments on May 24, 2013. Attorney Mark Sherinian appeared for the plaintiff and attorney Jason Craig appeared for all defendants. The motion is fully submitted.

## I. PROCEDURAL HISTORY

Plaintiff Debra Perzynski filed this action on January 13, 2012. Her complaint (Doc. No. 1) includes a jury demand and names the following defendants: Cerro Gordo County, Iowa, Kenneth Kline, both individually and in his corporate capacity as the County Auditor for Cerro Gordo County, and Heather Mathre, both individually and in her corporate capacity as the Budget Director for Cerro Gordo County. Perzynski's causes of action include a claim under 42 U.S.C. § 1983 against all defendants, malicious prosecution against all defendants and false imprisonment against Cerro Gordo County. She invokes the court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

Defendants filed their answer and affirmative defenses on February 15, 2012 (Doc. No. 3). The parties subsequently consented to trial, disposition and judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the case was assigned to me on April 23, 2013.

## II. RELEVANT FACTS

The following facts are presented in the light most favorable to Perzynski, the nonmoving party:

*Perzynski's employment.* Perzynski worked in the Management Information Systems (MIS) Department for Cerro Gordo County (County). In 2004, her payroll status was changed from salaried to hourly due to changes by the United States Department of Labor that classified her position as non-exempt. She originally kept track of her time on weekly timesheets, which her supervisor reviewed and signed. Beginning May 14, 2007, she was required to use a time clock, which meant she had to punch in and out when she arrived at work, went to lunch, returned from lunch and left work. While other hourly-wage County employees were also required to use the time clock, Perzynski was the only hourly-wage MIS department employee.

Perzynski often had to work outside the office, assisting with computer support in other County offices or picking up supplies for the department. She worked outside the office approximately twenty-five percent of the time and would often start or end her workday away from the time clock. The County had a procedure under which hourly employees could request corrections to the hours recorded by the time clock system. For example, if an employee forgot to punch in or punch out, the employee could request a correction from his or her supervisor. If the supervisor approved the proposed correction, the supervisor would submit it to the auditor's office. According to the defendants, two employees in the auditor's office, Sandy Shonka and Denice Knudson, were the only County employees authorized to make edits through the time clock software. Thus, if an employee's proposed correction was approved by his or her supervisor, one of those two individuals (usually Shonka) would make the necessary manual adjustment in the software system.

Perzynski's supervisor during the relevant period of time was Scott Tepner. Tepner gave Perzynski the user name and password to the time clock software so she could reboot the system as necessary and generally keep it up and running, consistent with her duties as an MIS employee. He showed her how the system worked and, according to Perzynski, showed her how to edit timecard entries so she could edit her

3

own.[1]  Because Perzynski, unlike other hourly employees, often worked away from the County courthouse, she needed to edit her time clock entries on a more-frequent basis. She felt that employees in the auditor's office were carefully scrutinizing her time and were suspicious of her need for regular edits.  Likewise, Tepner was aware that people gossiped about Perzynski receiving too much overtime pay.   As such, Perzynski contends that Tepner showed her how to edit timecard entries so she could make necessary corrections to her own entries without repeatedly going through the regular procedure.

Perzynski edited her own timecards from May 2007 to October 2009.  Each week, and in accordance with County policies, she printed her timecard for Tepner to review and sign.  The printed timecard did not show that any edits had been made but instead reflected the modifications Perzynski had made herself.  Tepner reviewed the weekly timecards with Perzynski, asked if any changes needed to be made, and then signed them and submitted them to Shonka in the auditor's office.

Tepner has testified that he did not authorize Perzynski to edit her own time entries through the time clock software and was not aware she was doing so.  However, he also testified that her weekly timecards never caused him to suspect that she was being paid for more time than she actually worked.  He believed Perzynski regularly worked one to four hours of overtime every two weeks.

***Events leading to discovery of edits.***   Perzynski's edits to her timecards were discovered in October 2009.  An edit had been made for 12:00 a.m. (midnight) that, apparently, should have been 12:00 p.m. (noon).  This caused Perzynski's timecard to reflect 15 hours of overtime for a single day.  Knudson, Shonka and Mathre (who also worked in the auditor's office) found the mistake.  The County's external auditor, Janis Slater, was at the courthouse that day to conduct a regular annual, external audit.

---

[1] Perzynski and Tepner had a romantic relationship prior to 2007, when he became her supervisor.  I point this out only because it could cause reasonable jurors to be more likely to find that Tepner did, in fact, authorize Perzynski to edit her own time entries.

4

Knudson called Tepner to ask if this amount of overtime was correct and he said it was not. Knudson discovered that the entry had been created through the computer rather than with the time clock and that neither she nor Shonka had entered it into the system. Knudson confronted Tepner who said he had not made the edit, but confirmed (based on the IP address) it had been made using the computer in the MIS server room. Knudson asked Tepner not to say anything to Perzynski so they could monitor the situation and find out if further edits were made. However, Tepner told Perzynski that her time cards were being investigated and she stopped making edits.

Further investigation revealed that a total of 595 edits were made to Perzynski's time entries from the computer in the MIS server room over a period of two years. No such edits were found with regard to any other employee's time records. Slater gave notice of the situation to the Office of the Auditor for the State of Iowa and to the County Auditor, Kenneth Kline. Kline met with Tepner, Mathre, Slater, personnel manager Tom Drzycimski, County Supervisor Bob Amosson and the County Attorney to discuss the situation on November 10, 2009.

This same group, except for Slater and the County Attorney, met with Perzynski on November 12, 2009. When she was asked to explain the edits, she stated that she had no explanation. Perzynski now explains that Tepner had warned her prior to the meeting that she was going to be fired regardless of what she said. Based on that information, and following the advice of her attorney, she declined to provide an explanation during the meeting. Her employment was terminated the same day.

On December 11, 2009, a hearing was held on Perzynski's claim for unemployment benefits. At this hearing, Perzynski admitted to editing her time entries and stated that her purpose for doing so was to reflect the time she actually worked for the County.

***Events leading to criminal charges.*** Kline and Mathre first met with Chief Deputy David Hepperly on November 16, 2009. After explaining the situation, they asked Hepperly to investigate for possible criminal charges. They explained that they

5

were still in the process of documenting information from the time clock software that would be needed for a criminal investigation.[2]

Kline and Mathre met with Hepperly in December 2009 to discuss a report they had prepared with calculations that were presented as unauthorized time clock edits/adds. This report included a base amount of $1,644.04 that they were "firm" and "solid" about as being unearned compensation based on the edits. Mathre explained this figure was based on instances in which Perzynski had edited her time back or forward from the time she actually clocked in or out. For example, if she clocked in at 8:30 a.m. and edited the time to 8:10 a.m., they calculated 20 minutes of unearned compensation. If she clocked out at 4:30 p.m. but edited it to 5:00 p.m., they calculated 30 minutes of unearned compensation. The minimum number was based on a strict reading of actual time clock punches.

The report also showed Perzynski could have received unearned compensation of up to $7,131.84, but this was considered less quantifiable because it involved time entries that had been added rather than simply changed. For example, if there were time clock entries at noon and 3:00 p.m. one day, and Perzynski then added an entry of 12:30 p.m., Kline and Mathre treated this as 2.5 hours of unearned compensation because the system showed she was not back at work until 3:00 p.m. but she created an entry showing that she returned at 12:30 p.m.

Hepperly conducted an investigation that included interviews with ten individuals who had knowledge of the case, in January and February 2010. None of those individuals were asked whether they had witnessed Perzynski not working when her timecards, as edited, reflected that she was, and none of them offered such information.

Hepperly discussed whether to file criminal charges with Assistant Attorney General Andrew Prosser. Kline was present at their final meeting before the criminal charges were filed. Hepperly filed the complaint on February 22, 2010. He called

_____

[2] Kline and Mathre assert this information was compiled under the direction of the state auditor's office. Perzynski maintains that Kline and Mathre conducted their own investigation.

6

Perzynski that day and she voluntarily turned herself in. She was arrested and incarcerated in the Cerro Gordo County jail for a short time that day. Prosser then filed the trial information on March 23, 2010, charging Perzynski with theft in the second degree in violation of Iowa Criminal Code §§ 714.1 and 714.2(2). A district court judge approved the trial information and minutes of evidence, thus allowing Prosser to proceed with prosecution.

*Dismissal of criminal charges.* Perzynski filed a motion to dismiss the criminal case on September 22, 2010. She argued that she could not face trial for theft because the State could not prove that she did not actually work during the times reflected by her edits to the time clock computer system. In other words, even if those edits were not authorized, there was no evidence that she received compensation for time not actually worked. Judge Stephen P. Carroll ultimately granted the motion, finding that while the factual allegations established unauthorized use of a computer system to edit time records, there were no factual allegations "providing a nexus between her unauthorized use and her receiving any compensation in excess of that to which she was entitled by virtue of the hours she actually worked for the County." As such, the criminal case was dismissed on February 4, 2011.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus,

"the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper jury question [is] presented." *Id*. at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*.

The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect

8

to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. ANALYSIS

Defendants seek summary judgment on all claims. They argue Perzynski's Section 1983 claim must be dismissed because she cannot prove: (a) that the defendants knowingly made any materially false, fictitious or fraudulent statements that led to the criminal charges filed against her or (b) that there was an official governmental policy that led to her being criminally charged. They also argue there was probable cause supporting the decision to charge Perzynski with theft.

Defendants contend they are entitled to summary judgment on Perzynski's malicious prosecution claim because she cannot prove: (a) the defendants caused her prosecution, (b) the defendants acted with malice or (c) that there was want of probable cause. Finally, they argue they are entitled to judgment on Perzynski's false imprisonment claim because Perzynski was not unlawfully detained. I will address each claim separately below.

*A.      Section 1983*

In Count I of her complaint, Perzynski seeks damages from all three defendants pursuant to 42 U.S.C. § 1983.  To prevail on a Section 1983 claim, a plaintiff must establish two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right that was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  As for the first element, Perzynski claims that she was "denied her constitutionally protected right not to be deprived of her liberty without due process of law" when she was arrested for theft.[3]  "By virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty."  *Baker v. McCollan*, 443 U.S. 137, 142 (1979).  Thus, to establish the first element Perzynski must show that she was deprived of her liberty without probable cause.  The second element requires her to show that this occurred because the named defendants, acting under color of state law, caused the deprivation.  *See, e.g., Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996) ("An official who causes such a deprivation is subject to § 1983 liability.").

*1.      Probable Cause*

The Eighth Circuit has stated that "when the issue of probable cause arises in a damage suit and the facts are not disputed or are susceptible to only one reasonable inference, the question is one of law for the court."  *Fleming v. Harris*, 39 F.3d 905, 907 (8th Cir. 1994) (citing *Warren v. City of Lincoln*, 864 F.2d 1436, 1439 (8th Cir.

---

[3] Perzynski's complaint is not exactly clear as to her specific constitutional claim.  This prompted defendants to point out that malicious prosecution is not actionable under Section 1983 because it is not a constitutional injury.  *See Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001); *see also Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000).  During the summary judgment hearing, Perzynski's counsel stated that the alleged constitutional violation at issue is arrest and imprisonment without probable cause under the Fourth and Fourteenth Amendments.

1989) (en banc), *cert. denied*, 490 U.S. 1091 (1989)).  Here, I will view evidence in a light most favorable to Perzynski in analyzing the question of whether probable cause existed at the time of her arrest.

Perzynski was charged with theft via a complaint filed by Hepperly in the Iowa District Court for Cerro Gordo County on February 22, 2010.  P. App. 94.  The complaint alleged that she made unauthorized entries into a computerized time keeping system and, as a result, received payment of wages "that were not lawful."  *Id.*  The complaint further alleged that the amount of "fraudulent wages" was between $1,000 and $10,000.  *Id.*  The complaint included Hepperly's sworn declaration that it was based on facts known to Hepperly or told to him by other reliable persons.  *Id.*  Once the complaint was filed, Perzynski turned herself in and was booked and incarcerated for some period of time before being released on her own recognizance.  P. App. 18.  There is no dispute that she was deprived of her liberty for at least a short period of time because of the criminal complaint.

"Probable cause exists when a police officer has reasonably trustworthy information that is sufficient to lead a person of reasonable caution to believe that the suspect has committed or is committing a crime."  *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  Iowa's Civil Jury Instructions describe probable cause as follows:

> Probable cause for filing a criminal charge means having a reasonable ground.  Probable cause exists where the [arresting officer] knew enough about the facts and circumstances and had reasonable trustworthy information, including what someone else told [him] [her] so that a reasonable person would believe that the plaintiff was guilty of the crime charged.

> Probable cause does not require absolute certainty or proof beyond a reasonable doubt.  It is to be determined by the factual and practical considerations of everyday life on which reasonable and careful persons [not legal experts] act.

Iowa Civil Jury Instruction 2200.3 (Malicious Prosecution – Probable Cause).  A similar concept, reasonable belief for making an arrest, is explained this way:

> A person's belief is reasonable if it is based on reasonably trustworthy information about the facts and circumstances which would allow a reasonably careful person to believe a crime had been committed.

> Whether an arrest is based on a reasonable belief is determined by the circumstances existing and known to the [arresting officer] when the arrest was made, and not later investigation of the facts or the outcome of later criminal charges.

Iowa Civil Jury Instruction 2800.4 (False Arrest – Reasonable Belief).  All of these descriptions share the same key, objective elements.  If an officer has "reasonably trustworthy information" that would lead a reasonable person to believe that the suspect committed a crime, probable cause exists.

The Supreme Court has recognized that "[t]he probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  As such, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Illinois v. Gates*, 462 U.S. 213, 235 (1983).  Instead:

> To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.

*Pringle*, 540 U.S. at 371.  This means that I must consider the information that was available to Hepperly as of February 22, 2010, to determine if there was probable cause to charge and arrest Perzynski on that date.

As discussed above, Hepperly conducted an investigation that included interviews of ten witnesses.  He had information that Perzynski used the County's

12

computer software system to make 595 edits to her own time entries over a period of approximately two years. He had information from Tepner that Perzynski denied making the edits when Tepner confronted her, but that the edits then stopped immediately. P. App. 129. Tepner told him that Perzynski was not authorized to make edits. P. App. 131. Indeed, Tepner stated that no one in the MIS department, or at the courthouse in general, should have been logging into the system with that password to adjust Perzynski's time entries. *Id.* Tepner also stated that he had been unaware that Perzynski was making her own edits. P. App. 132.

Other witnesses likewise advised Hepperly that Perzynski was not authorized to log into the system and edit her own time entries. Hepperly also learned Perzynski's practice of making secret edits was discovered only because she made an error that resulted in the appearance that she worked 15 hours of overtime in a single day. Of course, and as discussed above, Hepperly also had a report from Kline and Mathre with calculations that were presented as being the dollar value of the unauthorized time clock edits/adds. According to Kline and Mathre, they were "firm" and "solid" on a minimum figure of $1,644.04 as the minimum amount of unearned compensation based on Perzynski's edits. While that information turned out to be either incorrect or, at least, impossible to prove, there is no evidence that Hepperly knew that at the time he filed the complaint. Indeed, it was reasonable for him to believe that Perzynski, having made hundreds of unauthorized secret edits to her time entries over a period of two years, received some amount of unearned compensation.

Even when the evidence is viewed in a light most favorable to Perzynski, no reasonable juror could find that Hepperly lacked probable cause to charge her with theft on February 22, 2010. As of that date, he had "reasonably trustworthy information" that would lead a reasonable person to believe that Perzynski committed that crime. He did not have to have enough information to prove each element of that crime beyond a reasonable doubt. *See, e.g., Gates,* 462 U.S. at 235. He was entitled to trust that his

13

sources, who included the County Auditor, the County Budget Director and an outside auditor, were providing accurate information.

My conclusion that probable cause existed as a matter of law is bolstered by the Iowa District Court's approval of the trial information and minutes of evidence on March 23, 2010. P. App. 117. By that date, Prosser had taken over Perzynski's prosecution and had prepared minutes of evidence which summarized each witness's expected testimony. P. App. 118-23. In all material respects, the minutes of evidence describe the information that was available to Hepperly one month earlier, when he filed the complaint.

An Iowa District Court judge reviewed the minutes and found that the evidence, if unexplained, "would warrant a conviction by the trial jury." P. App. 117. The minutes stated Mathre would testify that the "value in dollars of the edits" was at least $1,644.04. P. App. 120. However, the minutes made no representation that any witness would testify that Perzynski did not work the hours reflected by her edited time records. P. App. 118-23. While this lack of evidence later proved to be fatal to the criminal charge against Perzynski, it did not prevent the reviewing judge from finding that there was probable cause to proceed with the case.

In short, in hindsight it is easy (and, frankly, perfectly fair) to be critical of the decision to charge Perzynski with theft. However, in considering the information known to Hepperly on February 22, 2010, no reasonable juror could find that probable cause was lacking. As such, Perzynski cannot demonstrate that she suffered an unconstitutional deprivation of her liberty due to the arrest and period of incarceration that resulted from that charge. Defendants are entitled to summary judgment on Perzynski's claim under Section 1983.

## 2.    Kline's and Mathre's Liability

Even if a jury could find that probable cause was lacking, Perzynski would have to make an additional showing in order to recover against Kline and Mathre.  To hold a public official liable under Section 1983 for causing a false arrest or imprisonment, a plaintiff must show that the official "instigated" the arrest.  *See, e.g., Busch v. City of Anthon, Iowa*, 173 F. Supp. 2d 876, 895 (N.D. Iowa 2001).  This means much more than simply reporting information to law enforcement.  Indeed:  "[t]here is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment, or for identifying the plaintiff as the person wanted."  *Id.* (quoting *Dixon v. Hy-Vee, Inc.*, No. 00-1234, 2001 WL 912738 (Iowa Ct. App. Aug. 15, 2001)).  Instead, the official must have knowingly supplied false information, which means "supplying information the supplier knows is false, and does not mean the mere good faith supplying of mistaken information."  *Id.* (citing *Powers v. Carvalho*, 117 R.I. 519, 368 A.2d 1242, 1248 (1977)).

Viewing the facts in the light most favorable to Perzynski, Kline and Mathre told Hepperly that Perzynski had been paid a minimum of $1,644.04 in unearned compensation and that they were "firm" and "solid" on this number.  Hepperly relied on this information in making his arrest because he needed proof of value for a theft charge.  The real issue is whether Perzynski can demonstrate a genuine issue of material fact as to whether this information was knowingly false when it was provided to Hepperly.

Perzynski argues this was a knowingly and intentionally false statement because Kline and Mathre knew they could not *prove* she did not work the hours that were reflected in her edited time cards.  Perzynski relies on deposition testimony during Perzynski's criminal case in which Mathre stated she did not know whether Perzynski worked the time she had claimed on her edited timecards.  P. App. 38.  Perzynski also relies on a statement Kline made to Hepperly in his interview in response to a question

on the difference between the minimum and maximum numbers Kline and Mathre had calculated for unearned compensation.  Kline stated:

> There are things that, you know, these, this figure incorporates everything by which we had some information to judge.  Was it reliable or not?  You could read it different ways.  The answer is, we don't know but we have some information we can quantify, that's what this constitutes.  There's a lot, you know, who the hell knows.  She creates four punches, two days later, I mean she didn't punch a single time, she creates four punches, how do you quantify that?  I don't even know if she was here that day.  I have no information that she was here that day, other than this calendar, but, you know, it doesn't tell us when she was here.

P. App. 177.  Evidence as to whether a person knows he or she cannot prove an assertion is not evidence that person knows the assertion is false.  This evidence fails to demonstrate a genuine issue of material fact on whether Kline and Mathre knew their statements were factually false when they made the statements.

Mathre testified she *did not know* whether Perzynski had worked the hours reflected in her edited time cards:

> Q:     Okay.  So you really – Are you telling me that you know she didn't work for the $8,700 that you claim that she got paid for two and a half years?
>
> A:     Do I know she didn't work?
>
> Q:     That she didn't work that time.
>
> A:     No.

P. App. 38.  To allow a jury to find in her favor, Perzynski would need to present evidence that when Mathre made the relevant statements to Hepperly, Mathre *did* know that Perzynski actually had worked the hours reflected in her edited timecards.  In other words, Mathre had actual knowledge that Perzynski had worked those hours yet chose to deceive Hepperly by telling him that she had not done so.

This is where the uncertainty caused by Perzynski's edits comes back to bite her. That uncertainty led to the dismissal of criminal charges against her, as Judge Carroll determined that a theft charge could not proceed to trial without proof that Perzynski received pay for hours she did not work. Now, however, Perzynski is the plaintiff in a civil case and bears the burden of proof. She must show not only that she actually worked all of the claimed hours, but also that Mathre knew this but provided contrary, false information to the authorities.

There is no evidence that could support such a finding. Even if Mathre was wrong in believing that Perzynski's edits resulted in overpayments, being wrong is far removed from knowingly providing false information. Or, as I stated above, being unable to prove an allegation is distinct from knowing that the allegation is false. As such, even when the evidence is viewed in a light most favorable to Perzynski, the record does not allow a reasonable juror to find that Mathre acted with the required, culpable state of mind when she told Hepperly she was "firm" or "solid" on $1,644.04 being the minimum amount of unearned compensation paid to Perzynski. There is no evidence that Mathre knew this statement was false when it was made.

The same analysis applies to Kline. Kline's interview with Hepperly demonstrates only Kline's knowledge of how the dollar amounts were calculated and why the larger number was harder to quantify. It does not generate a fact issue as to whether Kline knew Perzynski was entitled to compensation for the edited hours but still chose to tell Hepperly she was not. If anything, Kline's statement is like Mathre's in that it demonstrates he did *not* know whether Perzynski had actually worked the hours she reported.

Perzynski's evidence only demonstrates that Kline and Mathre made an accusation based on an assumption that an employee making hundreds of secret edits to her own time entries received unearned compensation. That assumption could not be proved true but also cannot be proved false. Mathre and Kline may have been careless in providing information to Hepperly. However, this does not demonstrate that they

17

knowingly made false statements that instigated a false arrest. Because Perzynski has failed to produce any evidence that would allow the jury to find that Kline and Mathre knowingly made false statements, summary judgment is appropriate on the Section 1983 claim against them even if probable cause to support the charge of theft against Perzynski was lacking.

### 3.    Cerro Gordo County's Liability

The third defendant, Cerro Gordo County, likewise has an alternative argument for summary judgment on the Section 1983 claim. The County contends it is entitled to summary judgment because Perzynski cannot prove there was an official governmental policy that led to her being criminally charged. Municipalities may not be held liable under Section 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Stepnes v. Ritschel*, 663 F.3d 952, 963 (8th Cir. 2011) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). "A 'policy' is an 'official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'" *Cline v. Union Cnty., Iowa*, 182 F. Supp. 2d 791, 802 (S.D. Iowa 2001) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)). "A policy can be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Dahl v. Rice Cnty., Minn.*, 621 F.3d 740, 743 (8th Cir. 2010).

Perzynski argues the County is liable because a policy can be inferred from Kline's decision to report Perzynski to the sheriff's department for investigation. She

argues Kline had decision-making authority and his decision to report Perzynski and make false representations to Hepperly ultimately led to her arrest. The County argues this is insufficient to demonstrate an official policy or custom in this case or that it was the "moving force" behind Perzynski's arrest.

I agree with the County that Perzynski has failed to produce any evidence that demonstrates the alleged constitutional violation was the result of any official governmental policy. Even assuming that Kline and Mathre made false representations that led to her arrest, there is no evidence that they made the representations based on an official governmental policy or custom rather than their own free will. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). A governmental policy also cannot be inferred simply from pointing out that Kline had decision-making authority and he decided to make false representations to law enforcement. Perzynski has presented no evidence that this single incident represented a policy of either Kline's or the County's. *See Dahl*, 621 F.3d at 743 (acknowledging that although a policy can be inferred from a single decision, a single incident where a sheriff lost his temper did not constitute deliberative action representing a policy).

Perzynski's second theory of the County's liability is based on the "cat's paw" concept. In the employment discrimination context, the Eighth Circuit has applied the cat's paw rule to mean "an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design." *Qamhiyah v. Iowa State Univ. of Science and Tech.*, 566 F.3d 733, 742 (8th Cir. 2009) (quoting *Richardson v. Sugg*, 448 F.3d 1046, 1060 (8th Cir. 2006)). She relies on *Smith v. Bray*, 681 F.3d 888, 897 (7th Cir. 2012), to suggest the cat's paw theory can be used to

hold the employer vicariously liable under Section 1983.[4] Perzynski's counsel acknowledged during the hearing that no Eighth Circuit case supports the cat's paw theory in this context.

Perzynski suggests that Hepperly was used as the "cat's paw" and that Kline improperly influenced Hepperly in order to have Perzynski arrested and criminally prosecuted. Even if this theory was legally viable, and it is not, there is no evidence to support it. Perzynski relies on evidence that Kline was "very upset" about the situation and wanted someone held accountable, that he took over the investigation from the state auditor's office and conducted his own investigation, and that he attended the final meeting between Prosser and Hepperly before the charges were filed. This evidence would not permit a reasonable jury to find for Perzynski on a cat's paw theory. In any event, that theory cannot be used to hold the County liable because it essentially would employ a *respondeat superior* theory with Kline as the tortfeasor. The law is clear that "a municipality cannot be held liable *solely* because it employs a tortfeasor . . . ." *Monell*, 436 U.S. at 691.

Perzynski has failed to set forth sufficient evidence demonstrating a genuine issue of material fact as to whether the County could be held liable because she has failed to demonstrate that an official governmental policy or custom caused the alleged violation of her constitutional rights. As such, the County would be entitled to summary judgment on the Section 1983 claim even if probable cause to support the charge of theft against Perzynski was lacking.

---

[4] *Smith v. Bray* is not persuasive authority for this argument. It is a Section 1981 case involving race discrimination and retaliation in the private sector and acknowledges that in *Waters v. City of Chicago*, 580 F.3d 575, 586 n.2 (7th Cir. 2009), the court had questioned whether the cat's paw theory could be used to establish municipal liability under Section 1983 where the biased subordinate was not a policy-maker.

**B.      Malicious Prosecution**

Count II asserts a claim of malicious prosecution against all three defendants. To succeed on this claim under Iowa law, a plaintiff must prove: (1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of the defendant for bringing the prosecution, and (6) damage to the plaintiff.   *Whalen v. Connelly*, 621 N.W.2d 681, 687-88 (Iowa 2000) (en banc). Defendants argue Perzynski's malicious prosecution claim must be dismissed as a matter of law because she cannot prove that (1) defendants instigated her prosecution, (2) defendants acted with malice or (3) there was want of probable cause.

**1.      Probable Cause**

As discussed in Section IV(A)(1), *supra*, I find as a matter of law that probable cause existed to support a charge of theft against Perzynski when that prosecution was commenced.   As such, the defendants are entitled to summary judgment on Perzynski's malicious prosecution claim.   Nonetheless, I will address the defendants' alternative arguments for summary judgment.

**2.      Instigation**

Defendants argue they did not instigate Perzynski's prosecution because they did not initiate, request, demand or direct that this incident be investigated for possible criminal charges.   They contend that they simply compiled information as instructed by the state auditor and the decision to prosecute was made by Assistant Attorney General Andrew Prosser.   Prosser relied on the report prepared by Kline and Mathre, as well as other evidence gathered by Hepperly, in deciding whether to prosecute.

According to the Restatement,

> A person who does not himself initiate criminal proceedings
> may procure their institution in one of two ways: (1) by

inducing a third person, either a private person or a public prosecutor to initiate them, or (2) by prevailing upon a public official to institute them by filing an information. It is, however, not enough that some act of his should have caused the third person to initiate the proceedings. One who gives to a third person, whether public official or private person, information of another's supposed criminal conduct or even accuses the other person of the crime, causes the institution of such proceedings as are brought by the third person. The giving of the information or the making of the accusation, however, does not constitute a procurement of the proceedings which the third person initiates thereon if it is left to the uncontrolled choice of the third person to bring the proceedings or not as he may see fit.

Restatement (Second) of Torts § 653, comment d. A private person may be responsible for the initiation of proceedings by a public official if he gave that official information he knew was false and the official acted on that information. Restatement (Second) of Torts § 653, comment g (adopted in *Rasmussen Buick-GMC v. Roach*, 314 N.W.2d 374, 376 (Iowa 1982)).

In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

Restatement (Second) of Torts § 653, comment g.

Perzynski relies on several facts to demonstrate that defendants instigated the prosecution. Viewing these facts in the light most favorable to Perzynski, she first points out that Kline and Mathre met with Hepperly in December 2009 and presented Hepperly with amounts they claimed were unauthorized payments of wages that Perzynski was not entitled to. Kline and Mathre were "firm" and "solid" on the minimum amount of $1,644.04. Hepperly did not understand how these amounts were calculated and was not given the itemization. Hepperly understood that Kline and

22

Mathre desired that criminal charges be filed and Hepperly noticed that Kline was "very upset" about the situation and wanted someone held accountable. Hepperly told another employee in the auditor's office that Kline was "very adamant" that the situation with Perzynski got "taken care of."

I find that this evidence is insufficient to demonstrate a genuine issue of material fact as to whether the defendants instigated the criminal prosecution either by pressuring Hepperly or knowingly providing false information. Perzynski does not offer any evidence as to whether Prosser was improperly influenced or relied on knowingly false information in deciding whether to prosecute. Her evidence only involves Hepperly. Perzynski admitted that the decision to file formal charges was made by Hepperly and Prosser. *See* Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ¶¶ 36, 37, Doc. No. 13-1 at 6. Hepperly investigated the case and filed the complaint which led to Perzynski's arrest, but it was Prosser who filed the trial information and minutes of evidence. Perzynski offers no evidence that could lead a jury to find that Prosser was in any way influenced by Kline and Mathre, alone or through Hepperly, when he and Hepperly decided to prosecute Perzynski.

As to Hepperly, the evidence does not demonstrate a fact issue as to whether the defendants instigated the prosecution by knowingly providing false statements or pressuring him to the extent their motivation was the determining factor in whether to prosecute. As discussed in Section IV(A)(2), *supra,* the evidence only demonstrates they provided information and – at most – made an accusation, which "does not constitute a procurement of the proceedings" when the third person is left with the uncontrolled choice whether to file charges. *See* Restatement (Second) of Torts § 653, comment d. There is no evidence to suggest that Hepperly and Prosser were influenced by Kline or Mathre in making the choice whether to file charges beyond merely considering the evidence they had provided.

Even if Kline and Mathre were upset about the situation, wanted someone held accountable and shared these feelings with Hepperly, this evidence does not create a

genuine issue of material fact as to whether they instigated the prosecution. To survive the motion for summary judgment, Perzynski must produce evidence that would allow the jury to find either (1) that Kline and Mathre knowingly provided false information to Hepperly or Prosser that they relied on in filing the charge or (2) that Kline and Mathre otherwise induced Hepperly and Prosser into filing the charge by taking actions that went beyond merely supplying information from which Hepperly and Prosser made an independent decision. She has not done so. As such, she has failed to demonstrate a genuine issue of material fact as to this element of her malicious prosecution claim.

### 3. *Malice*

In an action against a public official, the plaintiff must prove that the defendant acted with "actual malice." *Small v. McCrystal*, 708 F.3d 997, 1010 (8th Cir. 2013). Actual malice "cannot simply be inferred from a lack of probable cause, but must be the subject of an affirmative showing defendant's instigation of criminal proceedings against plaintiff was primarily inspired by ill-will, hatred or other wrongful motives." *Moser v. Black Hawk Cnty.*, 300 N.W.2d 150, 152-53 (Iowa 1981) (quoting *Vander Linden v. Crews*, 231 N.W.2d 904, 906 (Iowa 1975)). "If the defendant's purpose in instigating proceedings was otherwise proper, the fact he felt indignation or resentment toward the plaintiff will not subject him to liability." *Id.*

Perzynski argues there is sufficient evidence of malice by Kline and Mathre. She contends that Kline exhibited a "vitriolic demeanor and mannerism" after Perzynski's edits were discovered. For example, she references Tepner's deposition testimony in which he stated that Kline was "very animated" when he told Tepner that Perzynski was making changes to her timecard. P. App. 89. Kline told Tepner that he thought law enforcement should be present for their meeting when they confronted Perzynski about the edits. *Id.* Tepner testified that Kline pounded the table with his fist during that meeting, stating "this is fraud." P. App. 91. Tepner also testified that

when he heard Perzynski's case had been dismissed, he called the auditor's office to confirm the information. Within three minutes, Kline was in his office screaming at him not to talk to anyone about Perzynski's case. P. App. 88. Tepner had never seen Kline angry like this before. *Id.*

Perzynski also argues that Kline was deceptive. For support, she references Tepner's deposition testimony in which he testified that Kline stated before the meeting with Perzynski that Perzynski was going to be given two options. She could resign and pay back the money owed or she would be terminated and prosecuted. P. App. 89. However, during the meeting when Perzynski was confronted about the edits, he told her the County did not know whether charges would be filed. P. App. 93.

Finally, Perzynski argues that Kline had an improper motive for having Perzynski charged. She offers evidence that Kline's son has a background in computers and in early 2009, Kline approached Tepner about the possibility of his son working in the MIS department. P. App. 25, 86. Kline's son was later hired by the MIS department to do part-time work. P. App. 31, 86. Kline's son spoke with Tepner about a full-time position in March, May, and June of 2010. P. App. 26. Tom Drzycimski testified in his deposition that Kline's son applied for Perzynski's position in October 2011. P. App. 6. Perzynski believes that Kline's son no longer pursued this position and withdrew his name from consideration when he was listed as a potential witness by Perzynski's lawyer. P. App. 63.

As to Mathre, Perzynski's evidence of malice comes from Perzynski's observations of Mathre on two different occasions. Perzynski was acquainted with Mathre's husband from her former job with the Department of Health in Mason City. When Perzynski left that job to take a position with the County MIS Department, Mathre's husband said he was sorry to see her go because she was one of the few people he liked in the department. When this comment was repeated in front of Mathre, Perzynski observed that Mathre appeared upset. P. App. 124-25. Mathre was also "extremely hostile and defensive throughout her deposition" for the criminal

25

proceeding which Perzynski attended, particularly when Mathre was asked to explain her calculations. *Id.*

Even viewing these facts in the light most favorable to Perzynski, I cannot find that they present a genuine issue of material fact as to whether Kline or Mathre acted with malice during the investigation of Perzynski's edits. While the evidence may demonstrate Kline's and Mathre's frustration with the situation, it is insufficient to allow the jury to find that they were motivated by personal ill will or hatred toward Perzynski. Kline, as the County Auditor, would understandably take an interest in, and be upset by, the discovery of information that a County employee had been making hundreds of secret, unauthorized edits to his or her time entries. There is no evidence that his desire to investigate the situation and discuss possible criminal charges was motivated by ill will or hatred toward Perzynski.

The evidence of alleged malice on the part of Mathre is even weaker. Perzynski has failed to show that there is a genuine issue of material fact as to whether any alleged instigation of criminal proceedings by the defendants against Perzynski was "primarily inspired by ill-will, hatred or other wrongful motives." *Moser*, 300 N.W.2d at 152-53 (quoting *Vander Linden*, 231 N.W.2d at 906).

### C.     *False Imprisonment*

Count III asserts a claim of false imprisonment against only the County. "The essential elements of a claim for false arrest are: (1) detention or restraint against one's will, and (2) unlawfulness of the detention or restraint." *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984). "False arrest is indistinguishable from false imprisonment." *Id.* An arrest and imprisonment is not unlawful if the actor "has reasonable ground for believing that an indictable public offense has been committed and has reasonable ground for believing that the person to be arrested has committed it." *Id.* (citing Iowa Code § 804.7(3)(1983)). The term "reasonable ground" is

26

equivalent to "probable cause." *Id.* (citing *Children v. Burton*, 331 N.W.2d 673, 679 (Iowa), *cert. denied*, 464 U.S. 848 (1983)).

I have already found that there was probable cause to charge Perzynski with theft on February 22, 2010. *See* Section IV(A)(1), *supra*. Thus, the arrest and brief period of incarceration that resulted from the charge was not unlawful. As a matter of law, the County is entitled to summary judgment on Perzynski's false imprisonment claim.

## V.    CONCLUSION

For the reasons set forth herein, defendants' motion for summary judgment (Doc. No. 6) is **granted** as to all claims asserted by Perzynski in this case. The complaint is hereby **dismissed.** Judgment shall be entered against Perzynski and in favor of the defendants. Trial, which is scheduled to begin on September 16, 2013, and the final pretrial conference, which is scheduled for September 3, 2013, are hereby **canceled**.

**IT IS SO ORDERED.**

**DATED** this 18th day of June, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE